UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DARRIN LAPINE,

                Plaintiff,                    Case No. 2:14-cv-145

v.                                          Honorable R. Allan Edgar

ROBERT SAVOIE et al.,

                Defendants.

_____/

## OPINION

      This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has denied Plaintiff leave to proceed *in forma pauperis*. He thereafter paid the entire $400.00 filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's claims against Defendants Chambers, Peppler, Lambros, Garchow, Marra, Gordon, Ewing, Lawrence, Donnal, Bias, Postma, Unknown Part(y)(ies) #1, and Unknown Part(y)(ies) #2. The Court will order service of the complaint on the remaining Defendants.

## Discussion

I.   Factual allegations

Plaintiff Darrin LaPine presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Lakeland Correctional Facility, though the actions about which he complains occurred while he was housed at the Chippewa County Correctional Facility (CCCF), a county jail.  Plaintiff sues the following MDOC employees in the division of Parole and Probation:  Agent Bruce Garchow; Officers Nathan Marra and Stephanie Gordon; and Supervisor Steve Ewing.  He also sues the following current and former Chippewa County officials:  Sheriff Robert Savoie; Undersheriff Michele Bitner; former Lieutenant and current Tether Agent John Horke; Sergeant Dannette Rose; Corporals Ashley Reid and Chad Sibbal; Lieutenant Paul Stanaway; Deputies Marcie Kibble, Jordan Perry and David Hall; Detective Sergeant Greg Postma; Doctors Robert Graham and (unknown) Cullinan; Nurse Terri Lightfoot; Defense Attorney James Bias; Prosecutors Elizabeth Chambers and Brian Peppler; Judge Nicholas Lambros; and other unknown Chippewa County employees (Unknown Part(y)(ies) #2).  Plaintiff also sues two inmates, George Lawrence and Raymond Donnal, as well as the unknown correctional healthcare company employed by Chippewa County (Unknown Part(y)(ies) #1), whom Plaintiff names as "Corrections Healthcare Companies" (CHC).

Over the course of his 37-page civil complaint, Plaintiff complains about the allegedly unconstitutional conduct of 26 Defendants between November 16, 2009 and May 30, 2012.  His allegations range from having to witness a suicide attempt to being denied any grievance process, from being denied permission to attend his mother's funeral to being falsely accused of misconduct,

from being denied medical attention to being unfairly treated during his probation-violation hearing.[1] Petitioner strings his claims together by allegations that Defendants have conspired to retaliate against him for filing complaints.

On November 17, 2009, while in a jail holding cell, Petitioner witnessed another prisoner begin to have convulsions and eventually die. According to Plaintiff, Defendants Kibble and Stanaway, as well as Deputy Priskorn, made insufficient attempts to save the prisoner's life, and Stanaway and Priskorn laughed at the convulsions. Plaintiff filed statements against these Defendants and contacted the deceased inmate's family. Plaintiff was moved to the Mackinac County Jail shortly thereafter.

Plaintiff returned to CCCF on February 28, 2010, and he subsequently had conflict with Defendant Kibble and other staff, allegedly as the result of his statement. Plaintiff again left the facility in April 2010 and returned on May 5, 2010, where he remained until May 30, 2012.

Plaintiff alleges that CCCF has a custom or policy of not providing a grievance process or constitutionally adequate disciplinary proceedings on misconduct charges. He therefore contends that Defendants Savoie, Bitner, Horke, Rose and Reid are responsible for all of the due process violations he raises in his complaint. Plaintiff contends that he has filed a complaint or letter of concern about every incident described in his complaint. (Compl., docket #1, Page ID#10.) According to Plaintiff, at some unspecified time, some unspecified staff member withheld unspecified "court materials" in retaliation for his grievances. (*Id.*)

---

[1]Throughout his complaint, Plaintiff refers to having been on probation and having violated probation, and the Court has used that description in its summary of the facts. However, according to the Offender Tracking Information System (OTIS) maintained by the MDOC, Plaintiff was returned to prison following a parole violation. *See* http://mdocweb.state.mi.us/otis2/otis2profile.aspx?mdocNumber=305535 (last visited Sept. 29, 2014). The Court's analysis does not depend on Plaintiff's status as a probationer or parolee.

-3-

Plaintiff next complains that CCCF female officers have unrestricted access to the video monitors, allowing them to directly observe Plaintiff and other male inmates.

On March 10, 2011, the day Plaintiff was informed of his mother's death, Deputy Spencer, who is not a Defendant in this action, slammed Plaintiff's foot in the visitation room door. Another deputy not named as a Defendant intervened in the confrontation. The following day, Defendant Garchow interviewed Plaintiff on grievances Plaintiff had filed. Garchow allegedly told Plaintiff to sign off on the grievances or there would be consequences. Garchow told Plaintiff that he would not be allowed to attend his mother's funeral. Plaintiff allegedly responded, "I'll be seeing you Bruce." Garchow took the response to be a threat, and he wrote a "fabricated" report about the incident, which eventually was forwarded to Defendant Prosecutor Peppler. (*Id.* at 11.) The report was used to increase and then deny Plaintiff's bond. It also was used in the PreSentence Investigation Report (PSIR). Plaintiff contends that the report caused numerous violations of his rights, including perjury, false imprisonment, obstruction of justice and denial of access to the courts, among other things.

On July 25, 2011, Plaintiff was accused of assaulting Jerry Anderson. Plaintiff was moved to a detention cell by Defendant Sibbal and two non-Defendant deputies, Priskorn and Deprekle. Plaintiff complains that he did not receive a notice of charges or a hearing, but the incident nevertheless was placed in his PSIR. He admits, however, that the incident was removed from the PSIR on October 11, 2011. Plaintiff remained in segregation for an extended period of time. At some point, either immediately before or after Plaintiff entered detention, Plaintiff "received lacerations etc and landed on a steel table and concrete." (*Id.*) Plaintiff claims that Defendants Rose, Horke, Bitner and Savoie all denied his requests for medical treatment either in

-4-

person or in writing.  However, on July 29, 2011, Plaintiff was taken to the hospital for an x-ray, which revealed a hematoma on his left rib cage, and Plaintiff was told that he had a fracture.

Defendant Sibbal placed Plaintiff in the attorney-client room to speak with Hiawatha Behavioral Health (HBH).  Before being taken to the room, Plaintiff stated that he needed to urinate. When Plaintiff finished with HBH, he called the control center twice, speaking with Julie Deprekle (not a Defendant) and telling her that he needed to urinate badly.  She said that she would tell Defendant Sibbal.  When he called a second time, she was surprised that he had not been taken back. Plaintiff called back two more times and spoke to Defendants Sibbal and Perry, telling them that he needed to urinate.  They laughed at him, and he eventually urinated on himself.  After another hour, he was taken back to his cell.  He had to wait two more hours to get clean undershorts and a jumpsuit.

On August 23, 2011, a doctor injected Plaintiff's rib cage to treat the injury he incurred on July 25, 2011.  The doctor also increased his xanax from two milligrams three times per day to two milligrams four times per day.  Shortly thereafter, Defendant Dr. Graham unilaterally changed the prescription back to three times per day, by using white-out on the prescription label. Michigan State Police Detective Sergeant Smith investigated the incident and Defendant Graham subsequently was removed from CCCF.

On October 3, 2011, CHC took over healthcare at CCCF.  According to Plaintiff, Dr. Cullinan stopped all of his medications, courses of treatment, doctor appointments, physical therapy and scheduled surgeries without explanation.  Plaintiff alleges that Defendants Rose, Horke, Bitner and Savoie were directly involved in the denial of treatment.  He also alleges that Defendant CHC is liable as the provider of health services.

That same day, Plaintiff was accused of assaulting another prisoner, Frank Killips, III, and Defendants Stanaway and Hall moved Plaintiff from his unit to I-Max-5, a segregation unit. Plaintiff alleges that Defendants Rose and Horke were responsible for providing him due process, but he never received notice of any alleged misconduct, nor did he receive a hearing or written finding. The assault charge was used at his May 2, 2012 violation hearing. Defendants Rose and Reid forwarded the information to Plaintiff's probation and parole agent, Defendant Marra, who allegedly conspired with Defendant Chambers to place it in the PSIR. Deputy Thomas Lawler allegedly told Plaintiff that Defendant Savoie had stated that Plaintiff would remain in I-Max for the duration of his time at CCCF.

Plaintiff claims that, on approximately October 13, 2011, he learned from Defendant Stanaway that Defendant Reid had made false allegations that Plaintiff had been insolent. Plaintiff did not receive a notice or hearing. Plaintiff learned of the misconduct allegations when Defendants Reid and Rose refused to allow Plaintiff to participate in a scheduled call to his attorney. The charges apparently arose from Defendant Reid having overheard Plaintiff inquire of Deputy Heidi Kushne, "[w]hy some staff had their heads up their posterior." (*Id.* at 13.) Plaintiff complains that, after the incident, he overheard Defendants Reid and Rose "plotting against Plaintiff because of his complaints to retaliate and conspire against him etc[.]" (*Id.*) According to Plaintiff, Rose and Reid agreed that they would keep Plaintiff in I-Max and not provide Plaintiff notice, a hearing or a written decision.

According to the complaint, on numerous occasions Defendant Rose opened Plaintiff's attorney-client mail outside of Plaintiff's presence. Plaintiff also alleges that Defendant Garchow opened mail sent to Garchow's office by the attorney general and the courts, before

bringing it to Plaintiff at CCCF.  Plaintiff alleges that some unspecified mail opened by both Defendants was never received.

On December 2, 2011, Defendant Reid intentionally slammed Plaintiff's hand into the food slot, cutting it.  Plaintiff alleges that the cut required medical attention, but Reid and other Defendants denied treatment. Plaintiff also complains that medical orders from January 16 and January 25, 2012 were not followed and that he was denied surgery on his wrist and back.  In addition, on February 17, 2012, Plaintiff's left toe allegedly was cut to the bone on a cell door, but no medical treatment was provided.

Plaintiff complains about the general conditions of I-Max detention, asserting that a large number of lights were on 24 hours per day.  He also alleges that he was forced to live with immigrants who had not been medically examined and who potentially had dangerous diseases. Plaintiff's complaints went unanswered.

On January 7, 2012, Plaintiff was locked down in his cell by Defendants Stanaway and Hall for fighting with prisoner George Lawrence.  Plaintiff contends that Defendants were aware that no fight was involved and that Plaintiff was just engaged in horseplay.  According to Plaintiff, Defendants Stanaway, Hall and Postma edited the videotape of the incident, removing several minutes of horseplay before the incident, which showed only that Lawrence entered Plaintiff's cell and jumped on Plaintiff's back and that Plaintiff reached behind and set Lawrence down.  Plaintiff complains that Defendant Stanaway wrote another false misconduct on January 9, 2012, when another inmate changed his statement about the January 7, 2012 incident, falsely accusing Plaintiff of telling him what to write at the time of the incident.  Plaintiff was cleared of misconduct on

January 23, 2012, but he was kept on lock-down until January 26, 2012.  Defendants Savoie, Bitner,

Horke, Rose and Stanaway represented that he had been kept locked down by mistake.

On February 2, 2012, Plaintiff was taken to Defendant Savoie's office to discuss

Plaintiff's excessive complaints and lawsuits and his assistance to others in making complaints.

Savoie purportedly told Plaintiff the following:

> I want to be elected to at least two terms as sheriff[.]  What you['re] doing is
> reflecting badly on me, you need to stop what you['re] doing or you['re] going to find
> yourself isolated and I will do what ever it takes to get you to stop[.]  My staff,
> undershe[r]rif Bitner Lt Horke and especially Sgt Rose will follow my lead and
> instructions no matter what they are to the letter. . . I have spoke personally to the
> prosecutor at least three times about you and so has Sgt Rose[.]  You can either let
> this blow over and stop what you are doing and go home, or keep pushing shit around
> here and in court and you will go to prison. . . . I have running mates for the position
> of sheriff[.]  You are doing just the sort of things that they want to make me fail at
> being elected as sheriff, and I cannot have that.

(*Id.* at 15.)  According to Plaintiff, Savoie thereafter set in motion a series of unconstitutional and

retaliatory acts, including false write-ups, segregation without notice or opportunity to be heard,

denial of access to the court, "misconduct in office, bond impediment, probation violations and

resentenced to prison etc in conspiracy with the Defendants in this case[.]"

Between February 6 and July 12, 2012, Defendant Kibble allegedly "displayed

psychotic behavior," taking Plaintiff's blankets, sheets and shower shoes and making threats against

Plaintiff.  (*Id.* at 16.)  Plaintiff sought a restraining order, but it was not granted.  Kibble allegedly

continued to harass Plaintiff.

On March 2, 2012, Defendant Probation Officer Marra asked Plaintiff for addresses

to which he could be released in Emmet or Cheboygan Counties, as Marra refused to supervise

Plaintiff in Chippewa County.  On March 6, 2012, Marra issued a probation violation against Plaintiff and gave him a delayed hearing.

Defendant Reid told Plaintiff on April 25, 2012 that he had orders from Defendants Rose, Horke, Bitner and Savoie to allow Plaintiff only 20 minutes out of his cell for showering each day.  Plaintiff told Reid that he did not believe him and wanted something in writing.  He also gave Reid a copy of *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  A few hours later, Reid returned with Deputy Scott Sheppard, who is not a Defendant in this action.  Defendant Reid again told Plaintiff that he would be locked down for 23 hours each day.  When Plaintiff asked for a written decision, Defendant Reid told him that Reid did not have to provide one.  Defendant Reid subsequently returned again with Defendant Nurse Lightfoot.  Reid again told Plaintiff that he would not receive notice and a hearing.  Plaintiff then learned from Deputy McBryde that Defendants Lightfoot and Reid, allegedly in conspiracy, wrote a false report that Plaintiff had threatened to blow up the building.  Plaintiff again complains that he was not provided notice or an opportunity to be heard.  Plaintiff alleges that the false information was used by the prosecutor at his hearing, and it ultimately affected his placement in restricted housing after he was sent to the MDOC.  Plaintiff was kept in restricted housing on lock down for 23 hours per day until he was transferred out of the facility on May 30, 2012.

Plaintiff next complains that Defendant Horke sent a bill for Plaintiff's jail costs to a collection agency.  Plaintiff contends that he was and is in the custody of the state and Chippewa County and that he therefore was a ward of the state who has no obligation for the costs of incarceration.

In addition, Plaintiff alleges that Defendants Savoie, Bitner, Horke and Rose, as the officials responsible for the administration and operations of the CCCF, are responsible for his improper placement at a higher security level without due process. He also alleges that Defendants Bitner, Horke and Rose made unspecified threats to harm him in some way unless he stopped filing grievances against jail officials. He contends that Defendant Kibble made prisoners Lawrence and Donnel aware of staff's unhappiness with Plaintiff, thereby encouraging them to provide false testimony. Further, Plaintiff complains that he was never provided with copies of misconduct reports written by Defendants Reid, Stanaway, Rose, Perry, Horke, Hall, Lightfoot and unknown others.

In his only allegation against CHC (Unknown Part(y)(ies) #1), Plaintiff alleges that CHC and the CCCF administration were responsible for denying him unspecified necessary medical treatment, surgeries and medications prescribed by other doctors, ostensibly in violation of the Eighth and Fourteenth Amendments.

In a wholly separate set of claims, Plaintiff sues Defendants Lambros, Peppler, Chambers, Marra, and Ewing about their failure to provide him notice of his probation restrictions and their allegedly unconstitutional participation in the revocation of his probation. He asserts that Defendant Lambros, as the judge overseeing his criminal proceedings, lacked subject matter jurisdiction over his charges, because all of the offenses stemmed from incidents within Indian Country and he is an Indian under federal law. Plaintiff also alleges that Defendants Peppler and Chambers, acting without subject matter jurisdiction, maliciously prosecuted him. Defendant Marra, Plaintiff claims, acted without jurisdiction to oversee his probation. In addition, Plaintiff alleges that Defendants Lambros, Peppler, Chambers and Marra conspired with the other Defendants to retaliate

against him and to violate his constitutional rights.  He claims that Defendants placed false information in his PSIR, some of which was stricken by the court.  Plaintiff states that he had 75 write-ups by Defendants at CCCF, and all of his alleged misconducts continue to be used to increase his security classification at the MDOC, to deny him privileges, and, ultimately, to delay his parole. Further, Plaintiff alleges that Defendants Garchow, Marra, Gordon and Ewing made false representations to the 50th Circuit Court and thereby violated his constitutional rights.

In addition, Plaintiff claims that Defendant Marra improperly issued a probation-violation notice without providing Plaintiff a copy of his probation conditions.  He also alleges that Defendant Ewing approved and co-signed the notice, that Defendant Lambrose upheld the violation charged in the notice, and that Defendants Peppler and Chambers participated in the conspiracy to deprive him of his rights.  According to Plaintiff, Defendant Marra admitted in open court on May 2, 2012 that he had failed to provide Plaintiff with a copy of the probation order, thereby violating due process and state administrative procedures by leaving Plaintiff without notice of the special conditions of his probation.  He contends that he was unaware that one of the conditions barred him from assaultive behavior.  Plaintiff contends that Defendants Peppler and Chambers, by soliciting perjury from inmates Lawrence and Donnal, acted in conspiracy with Marra.  He also alleges that Defendant Lambros joined the conspiracy by refusing to dismiss the probation-violation charge and ultimately convicting Plaintiff of the probation violation.

Plaintiff asserts that the previously recited facts support 26 claims for relief for violations of the First Amendment (retaliation and speech), the Due Process Clause, the Eighth Amendment, the Supremacy Clause, the Double Jeopardy Clause and the Sixth Amendment.  He seeks declaratory and injunctive relief, together with compensatory and punitive damages.

-11-

II.     Immunity

Plaintiff claims that Judge Lambros violated his due process rights and joined in a conspiracy to maliciously prosecute Plaintiff when he found Plaintiff guilty of probation violations and resentenced him on the underlying convictions.

Generally, a judge is absolutely immune from a suit for monetary damages. *Mireles v. Waco*, 502 U.S. 9, 9-10 (1991) ("[I]t is a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of person consequences to himself.") (internal quotations omitted); *Barrett v. Harrington*, 130 F.3d 246, 254 (6th Cir. 1997); *Barnes v. Winchell*, 105 F.3d 1111, 1115 (6th Cir. 1997). Absolute judicial immunity may be overcome in only two instances. First, a judge is not immune from liability for non-judicial actions, i.e., actions not taken in the judge's judicial capacity. *Mireles*, 502 U.S. at 11; *see Forrester v. White*, 484 U.S. 219, 229 (1988) (noting that immunity is grounded in "the nature of the function performed, not the identity of the actor who performed it"). Second, a judge is not immune for actions, though judicial in nature, taken in complete absence of all jurisdiction. *Id.* at 12.

Plaintiff's allegations clearly fail to implicate either of the exceptions to judicial immunity. There is no doubt that convicting and sentencing Plaintiff was a judicial act and that Judge Lambros was acting within his jurisdiction in doing so. Moreover, Plaintiff's conclusory allegations that Lambros conspired with others to convict and sentence Plaintiff, even if true, are irrelevant to the determination of immunity; judicial immunity applies even when the judge is accused of acting maliciously and corruptly. *Mireles*, 502 U.S. at 11 (citing *Pierson v. Ray*, 386 U.S. 547, 554 (1967), *overruled in part on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982)).

Accordingly, Judge Lambros is absolutely immune from liability. Because Judge Lambros is clearly immune from liability in this case, Plaintiff may not maintain an action for monetary damages against him. 28 U.S.C. § 1915(e)(2)(B)(iii).

Plaintiff also sues Prosecutors Elizabeth Chambers and Brian Peppler for malicious prosecution and for making unreasonable sentencing recommendations. The Supreme Court embraces a functional approach to determining whether a prosecutor is entitled to absolute immunity. *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997); *Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988); *accord Koubriti v. Convertino*, 593 F.3d 459, 467 (6th Cir. 2010); *Lomaz v. Hennosy*, 151 F.3d 493, 497 (6th Cir. 1998). Under a functional analysis, a prosecutor is absolutely immune when performing the traditional functions of an advocate. *Kalina*, 522 U.S. at 130; *Spurlock v. Thompson*, 330 F.3d 791, 797 (6th Cir. 2003); *Grant v. Hollenbach*, 870 F.2d 1135, 1137 (6th Cir. 1989). The Supreme Court has held that a prosecutor is absolutely immune for the initiation and pursuit of a criminal prosecution. *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Lomaz*, 151 F.3d at 497. Acts which occur in the course of the prosecutor's role as advocate are entitled to the protection of absolute immunity, in contrast to investigatory or administrative functions that are normally performed by a detective or police officer. *Buckley v. Fitzsimmons*, 509 U.S. 259, 273, 276-78 (1993); *Grant*, 870 F.2d at 1137. In the Sixth Circuit, the focus of the inquiry is how closely related the prosecutor's conduct is to his role as an advocate intimately associated with the judicial phase of the criminal process. *Spurlock*, 330 F.3d at 797; *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997). Obviously, prosecuting Plaintiff for violations of his probation and making sentencing recommendations are intimately associated with a prosecutor's role as an advocate. Moreover, as with judicial immunity, allegations of malicious

intent do not overcome a prosecutor's absolute immunity. *See Imbler*, 424 U.S. at 428. Accordingly, Prosecutors Chambers and Peppler are entitled to immunity [from damages].

    III.    <u>Failure to state a claim</u>

    A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

## A.      Statute of Limitations

State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985).  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[2]

Many of Plaintiff's claims are untimely.  His allegations concern events that took place as early as November 16, 2009, though he did not file his civil rights complaint until on or about July 7, 2014.[3]  Plaintiff had reason to know of the "harms" done to him at the time they occurred.  Hence, absent tolling, any claims preceding July 7, 2011 are time-barred under Michigan's three-year limit.  Michigan law no longer tolls the running of the statute of limitations when a

---

[2]28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990.  The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

[3]Under Sixth Circuit precedent, a complaint is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Plaintiff dated his complaint on July 7, 2014, and it was received by the Court on July 10, 2014.  Thus, it must have been handed to prison officials for mailing at some time between July 7 and July 10.  For purposes of this opinion, the Court has given Plaintiff the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

plaintiff is incarcerated.  *See* MICH. COMP. LAWS § 600.5851(9).   Further, it is well established that

ignorance of the law does not warrant equitable tolling of a statute of limitations.  *See Rose v. Dole*,

945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir.

1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

       If the allegations of a complaint show that relief is barred by the applicable statute

of limitations, the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*,

549 U.S. 199, 920-21 (2007). The Court therefore will dismiss Plaintiff's allegations against

Defendants Kibble, Stanaway, Savoie, Bitner, Horke, Rose, Reid, and Peppler that occurred before

July 7, 2011.

### B.      Injunctive Relief

       Plaintiff seeks injunctive relief to bar all Defendants from acting to limit his rights

in the future.  Past exposure to illegal conduct does not, by itself, sufficiently prove that the plaintiff

will be subject to the illegal conduct again or present a "case or controversy" if unaccompanied by

any continuing, present adverse effects.  *See, e.g. Los Angeles v. Lyons*, 461 U.S. 95 (1983); *O'Shea

v. Littleton*, 414 U.S. 488, 495-496 (1974).  A court should assume that, absent an official policy or

practice urging unconstitutional behavior, individual government officials will act constitutionally.

*Lyons*, 461 U.S. at 102; *O'Shea*, 414 U.S. at 495-96.

       While Plaintiff claims that the allegedly unconstitutional conduct might reoccur, his

argument is wholly unsupported.  All events occurred while Plaintiff was housed at CCCF, the

Chippewa County jail, between 2009 and 2012.  Plaintiff presently is incarcerated with the MDOC.

He was housed at the Lakeland Correctional Facility at the time he filed his suit, and he is now

housed at the Gus Harrison Correctional Facility, both of which are located in Michigan's lower

peninsula.  In light of these facts, there exists virtually no possibility that Defendants will commit future unconstitutional acts affecting Plaintiff. Therefore the possibility that Plaintiff will be subjected to the same allegedly unconstitutional activity is too speculative to warrant injunctive relief or to deem the alleged activity a continuing violation of federal law.  As a consequence, Plaintiff's claims for injunctive relief will be dismissed as moot.

### C.    Color of State Law – Defendants Lawrence, Donnal & Bias

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Defendants Lawrence and Donnal are not officials of the state or any subdivision of the state.  Instead, they were fellow inmates with Plaintiff while he was housed at CCCF.  Plaintiff has not presented any allegations by which the conduct of Defendant-inmates Lawrence and Donnal could be fairly attributed to the State.  He therefore fails to state a § 1983 claim against Defendants Lawrence and Donnal.

Moreover, Plaintiff cannot show that his court-appointed attorney, James Bias, acted under color of state law.  In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that defense counsel performs a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State.  The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness.  But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client."  This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted).  The *Polk County* Court further held that this is true even of the state-appointed and state-paid public defender.  *Id.* at 321.  The Court said that, once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program.  *Id.* at 323.  The Court held that, even though a public defender is paid by the state, he or she does not act under color of state law in representing the accused.  *Id.* at 325.  Rather, defense counsel – whether privately retained or paid by the state – acts purely on behalf of the client and free from state control.  *Id*. The Sixth Circuit has adhered to the holding in *Polk County* in numerous decisions.  *See, e.g., Floyd v. Cnty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing traditional functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cnty. Pub. Defender*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003).  Plaintiff's court-appointed attorney therefore does not act under color of state law, and no claim under § 1983 can be maintained against him.

Accordingly, the Court will dismiss Defendants Lawrence, Donnal and Bias because they are not state actors and therefore are not subject to suit under § 1983.

### D.    Probation Violation – Defendants Garchow, Marra, Gordon, Ewing, Chambers, Peppler & Lambros

Plaintiff complains that Defendant Probations/Parole employees Garchow, Marra, Gordon and Ewing engaged in and conspired to engage in unconstitutional conduct that led to his probation-violation charges and aggravated the punishment he received for those violations. He alleges that Prosecutors Chambers and Peppler conspired to maliciously prosecute him.  Plaintiff also alleges that Defendant Lambros joined the conspiracy by convicting and sentencing him.  He further alleges that Defendants violated federal law and the Supremacy Clause by taking actions against Plaintiff in state court, because Plaintiff is a Native American governed by Indian law.

Plaintiff challenges the facts underlying his conviction on the probation-violation charges and his subsequent incarceration by the State of Michigan.  A challenge to the fact or duration of confinement, his action should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed.  *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and

-19-

§ 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g).

To the extent Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of Constitutional rights, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).

Plaintiff's allegations against Defendants Garchow, Marra, Gordon, Ewing, Chambers, Peppler and Lambros[4] clearly call into question the validity of his conviction and

---

[4]Because Defendants Chambers, Peppler and Lambros are immune from Plaintiff's suit for damages, the only relief against those Defendants that is not barred by prosecutorial or judicial immunity is Plaintiff's demand for declaratory relief. As discussed, however, any declaration that Defendants Chambers, Peppler, and Lambros acted

sentencing on the probation-violation charge.  Therefore, his claims against Defendants Garchow, Marra, Gordon, Ewing, Chambers, Peppler and Lambros are barred under *Heck* until his criminal conviction has been invalidated.  In addition, Plaintiff raises no unrelated claims against Defendants Marra, Gordon, Ewing, Chambers, Peppler or Lambros.[5]  The Court will dismiss them from the action.

### E.   Interference with Mail – Defendants Rose & Garchow

Plaintiff alleges that on several, unspecified occasions, Defendant Rose opened his confidential attorney-client mail outside his presence.  He also argues that he never received unspecified mail.  In addition, Plaintiff complains that, on unspecified occasions while Plaintiff was jailed at CCCF, Defendant Garchow opened mail addressed to Plaintiff that had been sent to Garchow's office by the Attorney General and the courts.  Plaintiff contends that, when he received the mail, it was out of order and that unspecified material was missing.

Interference with a prisoner's mail is constitutional if it is reasonably related to legitimate penological interests.  *See Thornburg v. Abbott,* 490 U.S. 401, 413 (1989).  To determine whether a prison official's actions are reasonably related to a legitimate penological interest, the Court must assess an official's actions by reference to the following factors: (1) whether there exists a valid, rational connection between the prison regulation and the legitimate governmental interest; (2) whether there remain alternative means of exercising the right; (3) the impact that accommodation of the asserted constitutional right will have on guards and other inmates, and on

---

unlawfully necessarily calls into question the legitimacy of Plaintiff's conviction and sentence, which is barred by *Heck*. *See Edwards*, 520 U.S. at 646-48.

[5]Plaintiff raises one additional claim against Defendant Garchow, challenging his opening of legal mail outside Plaintiff's presence.  That issue is addressed *infra*.

the allocation of prison resources generally; and (4) whether there are ready alternatives available that fully accommodate the prisoner's rights at de minimis cost to valid penological interests. *Turner v. Safley,* 482 U.S. 78, 89-90 (1987).

Incoming mail has long been recognized to pose a greater threat to prison order and security than outgoing mail. *Thornburgh*, 490 U.S. 401; *Turner*, 482 U.S. 78. However, when the incoming mail is "legal mail," the Sixth Circuit has recognized "heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003); *see also Kensu v. Haigh*, 87 F.3d 172, 174 (6th Cir. 1996) ("The right of a prisoner to receive materials of a legal nature, which have impact upon or import with respect to that prisoner's legal rights and/or matters, is a basic right recognized and afforded protection by the courts. . . ."); *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail. . . .").

In balancing the prisoner's rights with prison needs, the courts have approved prison policies that allow prison officials to open "legal mail" and inspect it for contraband in the presence of the prisoner. *See, e.g., Wolff v. McDonnell*, 418 U.S. 539, 577 (1974) (upholding such a policy against a Sixth Amendment attorney-client privilege claim and a Fourteenth Amendment due process claim based on access to the courts). In *Knop v. Johnson*, 977 F.2d 996, 1012 (6th Cir. 1992), the Sixth Circuit approved an opt-in system in which prison officials could open any mail sent to a

prisoner unless the prisoner affirmatively requested that "privileged mail," defined by the policy as mail sent by a court or by counsel, be opened in his presence.  *Id.*; *see also Sallier*, 343 F.3d at 874. In addition, as the Sixth Circuit has recognized,

> Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. . . [E]ven mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney.

*Sallier*, 343 F.3d at 874.  When mail from a legal source implicates either of these interests, that interest must be balanced against the interests in prison security and administration.  *Id.*

Plaintiff's allegations are insufficient to state a claim under *Sallier*.  Plaintiff's allegations against both Rose and Garchow are wholly conclusory.  *See Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  Unlike the majority of his allegations, Plaintiff recites no time frame in which the alleged incidents occurred.  He does not describe the nature of the mail that was opened or what mail ostensibly was not received.  Moreover, he does not allege that he requested special handling of his mail.  On these general allegations, Defendants Rose and Garchow lack sufficient information to provide notice of the claim against which they must defend.  *Twombly*, 550 U.S. at 555.  Plaintiff's First Amendment claims that Defendants Rose and Garchow interfered with his mail on some occasion or occasions therefore must be denied.

### F.  Lack of Due Process – Defendants Stanaway, Hall, Savoie, Bitner, Horke, Rose, Reid, Sibbal, Perry, Postma & Unknown Part(y)(ies) #2

Plaintiff contends that the CCCF had a custom and policy of not providing prisoners with notice and an opportunity to be heard on disciplinary charges, in violation of due process.  He also alleges that Defendants failed to provide a grievance process.

-23-

More particularly, Plaintiff alleges that Defendants Stanaway and Hall placed him in segregation on October 3, 2011, without due process.  Similarly, on January 7, 2012, Stanaway and Hall locked Plaintiff down in his cell for fighting Defendant Lawrence, again without due process. In addition, Plaintiff alleges that, on April 27, 2012, Defendant Reid reclassified him to segregation, without notice and a hearing.  Defendants Hall, Stanaway and Postma allegedly edited a videotape of the incident in a manner that was misleading, thereby depriving Plaintiff of due process.  Plaintiff also alleges that unknown custody officers (Unknown Part(y)(ies) #2) failed to provide him due process on unspecified occasions.  Further, Plaintiff complains that Defendants generally failed to provide a grievance process for hearing his complaints.  Finally, Plaintiff contends that Defendants Savoie, Bitner, Horke, Rose, Reid, Sibbal & Perry are responsible for the due process violations caused by the lack of disciplinary and grievance procedures at CCCF.

A prisoner's ability to challenge a prison misconduct conviction depends on whether the convictions implicated any liberty interest.  In the seminal case in this area, *Wolff v. McDonnell*, 418 U.S. 539 (1974), the Court prescribed certain minimal procedural safeguards that prison officials must follow before depriving a prisoner of good-time credits on account of alleged misbehavior.  The *Wolff* Court did not create a free-floating right to process that attaches to all prison disciplinary proceedings; rather the right to process arises only when the prisoner faces a loss of liberty, in the form of a longer prison sentence caused by forfeiture of good-time credits:

> It is true that the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison.  But here the State itself has not only provided a statutory right to good time but also specifies that it is to be forfeited only for serious misbehavior.  Nebraska may have the authority to create, or not, a right to a shortened prison sentence through the accumulation of credits for good behavior, and it is true that the Due Process Clause does not require a hearing "in every conceivable case of government impairment of private interest."  But the State having created the

> right to good time and itself recognizing that its deprivation is a sanction authorized
> for major misconduct, the prisoner's interest has real substance and is sufficiently
> embraced within Fourteenth Amendment "liberty" to entitle him to those minimum
> procedures appropriate under the circumstances and required by the Due Process
> Clause to insure that the state-created right is not arbitrarily abrogated.

*Wolff*, 418 U.S. at 557 (citations omitted).

Plaintiff does not allege that his jail misconduct convictions resulted in any loss of good-time credits. In addition, to the extent that he claims his jail misconducts may have affected the length of his sentence arising out of the probation violation, his claims are barred by *Heck*, 512 U.S. at 486-87, as previously discussed. Moreover, insofar as the jail misconduct convictions and his PSIR may ultimately affect his parole eligibility, Plaintiff has no liberty interest in his parole. *See Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (holding that Michigan parole procedures do not create a liberty interest and that parole decisions remain discretionary with the parole board).

Even in the absence of a protectible liberty interest in disciplinary credits, a prisoner may be able to raise a due process challenge to prison misconduct convictions that result in a significant, atypical deprivation. *See Sandin v. Connor*, 515 U.S. 472 (1995). Plaintiff has not identified any significant deprivation arising from his convictions. Unless a prison misconduct conviction results in an extension of the duration of a prisoner's sentence or some other atypical hardship, a due-process claim fails. *Ingram v. Jewell*, 94 F. App'x 271, 273 (6th Cir. 2004). Mere placement in segregation or on in-cell lock-down is not such a deprivation. *Sandin*, 515 U.S. at 484. Moreover, because Plaintiff had no liberty interest in disciplinary proceedings, any actions taken by Stanaway, Hall and Postma to edit the videotape of the incident did not deprive him of due process.

Moreover, to the extent that Plaintiff claims that the lack of a grievance procedure violated his right to due process, he also fails to state a claim.  The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure.  *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest in the grievance process, Defendants' failure to provide a grievance process did not deprive him of due process.

The Court therefore will dismiss Plaintiff's due process claims against Defendants Stanaway, Hall, Postma, Savoie, Bitner, Horke, Rose, Reid, Sibbal, Perry and Unknown Part(y)(ies) #2 for the alleged failures to provide notice and opportunity to be heard on jail misconduct tickets and for failing to provide a grievance process.  Because Plaintiff's sole allegation against Defendant Postma concerns the alleged violations of due process, the Court will dismiss Defendant Postma.

### G.  Violations of Policies and Procedures

In a related claim, Plaintiff contends that numerous Defendants violated CCCF and county procedures.  Plaintiff also indicates that he requires discovery to determine precisely which procedures were violated and by whom.

Defendants' alleged failures to comply with administrative rules and policies do not themselves rise to the level of constitutional violations. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580-81. As a consequence, Petitioner's complaints about violations of policies and procedures fail to state a § 1983 claim against any Defendant. Moreover, because Plaintiff has no constitutional right to the enforcement of CCCF policies and procedures and no due process rights to notice and a hearing, the Court finds no basis for allowing Plaintiff to conduct discovery of such policies or to amend his complaint to add due process and county procedural claims against new defendants.

### H.    Assessing Costs of Incarceration – Horke

Plaintiff sues Defendant Horke for assessing and forwarding to a collection agency a debt for Plaintiff's incarceration at CCCF and the MDOC. Plaintiff asserts that, as a prisoner, he has been a ward of the county and the state and may not be held liable for the costs of his imprisonment.

Plaintiff identifies no constitutional basis for his claim. Nor does he allege facts suggesting that the amount of reimbursement was wrongly calculated. Instead he simply asserts as a matter of principle that he should not be accountable for such debt. Contrary to his position, however, Michigan law provides that the costs of incarceration within the MDOC are recoverable

by the state as reimbursement, if the prisoner has sufficient assets.  *See* MICH. COMP. LAWS § 800.403.  As a consequence, Plaintiff fails to state a claim against Defendant Horke for his attempts to collect reimbursement.

> **I.    Supervisory Liability – Defendants Savoie, Bitner, Horke, Rose, Reid & CHC (Unknown Part(y)(ies) #1)**

Plaintiff alleges that, in addition to taking certain specific actions themselves, Defendants Savoie, Bitner, Horke, Rose and Reid are liable for the conduct of all other Defendants, because they are supervisory employees.  Plaintiff also alleges that CHC (Unknown Part(y)(ies) #1) is responsible for the actions of Defendants Graham, Cullinan and Lightfoot.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).  Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance.  *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  Accordingly, Plaintiff fails to state a claim against Defendants Savoie, Bitner, Horke, Rose & Reid on the basis of their

supervisory authority over other Defendants.  Plaintiff's allegations against these Defendants are limited to their active conduct respecting Plaintiff, as discussed elsewhere in this opinion.  In addition, because Plaintiff makes no factual allegations about active conduct by CHC itself, his claim against CHC (Defendant Unknown Part(y)(ies) #1) will be dismissed.

### J.    Eighth Amendment – Defendants Sibbal, Rose, Horke, Bitner, Savoie, Perry, Graham & Cullinan

Plaintiff makes a variety allegations concerning the denial of treatment for his medical needs by Defendants Sibbal, Rose, Horke, Bitner, Savoie, Perry, Graham, and Cullinan.[6]  The Court concludes that Plaintiff's allegations are sufficient to warrant service of his Eighth Amendment claims on these Defendants.

### K.    Retaliation

Plaintiff alleges that Defendants Savoie, Bitner, Horke, Rose, Reid, Stanaway, Kibble, Sibbal, Hall, Perry, Lightfoot, and Defendant Unknown Part(y)(ies) #2) retaliated against him for filing complaints and grievances by taking a variety of adverse actions, including falsifying misconducts, segregating Plaintiff without reason, and failing to follow their own procedures.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.* Moreover, a plaintiff must be able to prove that the exercise

---

[6]While Plaintiff has asserted that CHC also is liable for the medical actions taken by Lightfoot, Plaintiff wholly fails to allege that Lightfoot failed to provide medically necessary treatment.  He therefore fails to state an Eighth Amendment claim against Defendant Lightfoot.

of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000). The Court therefore will assume that Plaintiff has sufficiently alleged the first prong of the *Thaddeus-X* standard.

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive).

Plaintiff's allegations of retaliation against unknown officers for issuing falsified write-ups and misconduct reports about unspecified matters and at unspecified times are wholly conclusory. As a consequence, he fails to state a retaliation claim against Defendant Unknown

Part(y)(ies) #2.  Given that the Court already has dismissed Plaintiff's claims that Defendant Unknown Part(y)(ies) #2 violated due process and CCCF policy, Defendant Unknown Part(y)(ies) #2 will be dismissed for failure to state a claim.

Upon review, the Court concludes that Plaintiff's remaining claims of retaliation against Defendants Savoie, Bitner, Horke, Rose, Reid, Stanaway, Kibble, Sibbal, Hall, Perry and Lightfoot are sufficient to warrant service of the complaint.

**L.      Right to Privacy – Defendant Savoie**

Plaintiff alleges that, during his time in jail, CCCF had a policy of allowing female jail guards to have unrestricted access to the video monitors of Plaintiff while he was using the toilet and taking showers.  Plaintiff alleges that, as the policymaker for CCCF, Defendant Savoie is responsible for the invasions of his privacy caused by the policy.

At this juncture, the Court concludes that Plaintiff has sufficiently alleged the existence of a policy that violated his right to privacy.  In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county.  MICH. COMP. LAWS § 51.75 (sheriff has the "charge and custody" of the jails in his county); MICH. COMP. LAWS § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); MICH. COMP. LAWS § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*").  The Court concludes that Plaintiff has sufficiently alleged a privacy claim against Defendant Savoie, as policymaker for Chippewa County.

**Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims prior to July 7, 2011 will be dismissed with prejudice because they are barred by the statute of limitations.  The Court further concludes that all of Plaintiff's claims for injunctive relief are moot, as he has long since left the custody of Chippewa County. In addition, the Court concludes that Defendants Chambers, Peppler and Lambros are entitled to immunity from Plaintiff's claims for damages.   The Court also will dismiss Plaintiff's remaining claim for declaratory relief against Defendants Chambers, Peppler and Lambros, because his claims are barred by *Heck*, 512 U.S. at 486-87.  For the same reason, the Court will dismiss Plaintiff's claims related to his probation violation against Defendants Garchow, Marra, Gordon and Ewing.   Moreover, the Court will dismiss Plaintiff's claims against Defendants Lawrence, Donnal and Bias because they are not state actors.  The Court also concludes that Plaintiff fails to allege sufficient facts to state a claim against Defendants Rose and Garchow based on alleged interference with his mail.  Moreover, the Court will dismiss Plaintiff's due process claims against Defendants Savoie, Bitner, Horke, Rose, Reid, Lightfoot, Sibbal, Perry and Unknown Part(y)(ies) #2 because they fail to state a claim.  The Court also will dismiss Plaintiff's claim against Defendant Horke involving attempts to collect reimbursement for the costs of incarceration, because his allegations fail to state a claim.  The Court will serve Plaintiff's Eighth Amendment claims against Defendants Sibbal, Perry, Rose, Horke, Bitner, Savoie, Graham and Cullinan, but will dismiss the claim against Defendant CHC (Unknown Part(y)(ies) #1).  The Court also will serve Plaintiff's retaliation claims against Defendants Savoie, Bitner, Horke, Rose, Reid, Stanaway, Kibble, Sibbal, Hall, Perry and Lightfoot, but it will dismiss the retaliation claims against the unknown jail officers (Unknown Part(y)(ies) #2).  In addition, the

Court will serve Plaintiff's privacy claim on Defendant Savoie, as policymaker for Chippewa County with respect to matters involving the jail.

In sum, the Court will dismiss Defendants Chambers, Peppler, Lambros, Garchow, Marra, Gordon, Ewing, Lawrence, Donnal, Bias, Postma, Unknown Part(y)(ies) #1, and Unknown Part(y)(ies) #2 from the action. The Court will order the complaint served upon the remaining thirteen Defendants.

An Order consistent with this Opinion will be entered.


Dated:   10/27/2014                              /s/ R. Allan Edgar
                                          R. ALLAN EDGAR
                                          UNITED STATES DISTRICT JUDGE