UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DARRIN LaPINE,

                       Plaintiff,                 Case No. 2:14-CV-145

v.                                          Honorable R. Allan Edgar

ROBERT SAVOIE, et al.,

                       Defendants.

_____/

## OPINION AND ORDER

        Plaintiff Darrin LaPine, an inmate currently confined by the Michigan Department of Corrections (MDOC), filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 1. After screening, Plaintiff's remaining claims are against the following Defendants: Savoie, Bitner, Horke, Reid, Stanaway, Kibble, Sibbal, Perry, Hall, Graham, Cullinan, and Lightfoot. ECF No. 1, 14. Notably, Defendants Sibbal, Graham, and Hall have not been served in this matter, and as such will be dismissed from this case.  Plaintiff is seeking declaratory relief and punitive damages.

        Plaintiff makes several allegations against Defendants, which the Court has interpreted as follows:

        I. Defendants Rose, Horke, Bitner, Savoie, Perry, and Cullinan violated Plaintiff's Eighth Amendment right when they denied him treatment for his serious medical needs.

        II. Defendants Savoie, Bitner, Horke, Rose, Reid, Stanaway, Kibble, Perry, and Lightfoot retaliated against Plaintiff for filing complaints and grievances and by taking a variety of adverse actions, including falsifying misconducts, segregating Plaintiff without reason, and failing to follow their own procedures.

        III. Defendant Savoie, as policymaker for the facility, is responsible

for the invasions of Plaintiff's privacy caused by a policy that allowed
female jail guards to have unrestricted access to the video monitors
of Plaintiff while he was using the toilet and taking showers.

PageID.391-393. Defendants Cullinan and Lightfoot filed a motion for summary judgment on

October 22, 2015. ECF No. 95. Plaintiff filed a response in opposition to Defendants' motion for

summary judgment on November 23, 2015. ECF No. 113. Defendants filed a reply on December

7, 2015. ECF No. 122.

In addition, Defendants Kibble, Perry, Rose, Savoie, Stanaway, and Reid filed a

motion for summary judgment on October 23, 2015 (ECF No. 97), and a reply on December 4,

2015 (ECF No. 121), which raise issues of exhaustion and qualified immunity.  Plaintiff filed a

response to Defendants' reply on December 17, 2015. ECF No. 127. These matters are now ready

for a decision.

The following are the events in question viewed in the light most favorable to

Plaintiff. *Muhammad v. Close***,** 379 F.3d 413, 416 (6th Cir. 2004) (citing *Adams v. Metiva*, 31

F.3d 375, 382 (6th Cir. 1994) (noting any direct evidence offered by Plaintiff in response to a

summary judgment motion are accepted as true)). Plaintiff starts off his 341 page complaint by

generally alleging that female officers at the facility have unrestricted video access to all areas of

the jail, including the toilet and shower areas, which violates his privacy rights. PageID.10-11.

Next, Plaintiff states that on July 25, 2011, Plaintiff was accused of assaulting

Jerry Anderson. PageID.11.  Plaintiff was subsequently held in segregation for an extended

period of time, during which time he "received lacerations etc and landed on a steel table and

concrete." PageID.11.  Plaintiff requested medical care, but was denied care by Defendants Rose,

Horke, Bitner, and Savoie. PageID.11.  However, on July 29, 2011, Plaintiff was taken to the

hospital for a x-rays, which revealed that he had a hematoma on his left rib cage and a fracture. PageID.12.

On October 3, 2011, a new company took over healthcare at the facility where Plaintiff was housed. PageID.12. That day, Defendant Dr. Cullinan stopped all of Plaintiff's medical treatments, appointments, physical therapy, and scheduled surgeries. PageID.12. Defendants Rose, Horke, Bitner, and Savoie denied Plaintiff medical treatment by telling him that he would not receive any surgeries while at their facility. PageID.12. That same day, Defendant was accused of assaulting prisoner Frank Killips III. PageID.12. Defendant Stanaway consequently moved Plaintiff from his unit to the I-Max-5 segregation unit. PageID.12.

On December 2, 2011, Defendant Reid slammed Plaintiff's hand in the foot slot, which cut his hand. PageID.14. Defendant Reid denied Plaintiff medical treatment for the cut when Plaintiff asked him for medical care. PageID.14.

On January 7, 2012, Defendant Stanaway placed Plaintiff on lock down for fighting and assaulting prisoner George Lawrence. PageID.14. Defendant Stanaway wrote a false misconduct ticket against Plaintiff on January 9, 2012, for this incident. PageID.14. Plaintiff was cleared of the misconduct on January 23, 2012, but he remained on lock down until January 26, 2012. PageID.14. Defendants Savoie, Bitner, Horke, Rose, and Stanaway later stated that Plaintiff was kept in lock down by mistake.

On February 2, 2012, Plaintiff was taken to Defendant Savoie's office to discuss Plaintiff's excessive complaints and lawsuits, and his assistance in helping others make complaints. PageID.15. Plaintiff asserts that Defendant Savoie said the following to Plaintiff:

I want to be elected to at least two terms as sheriff[.] What you['re]

> doing is reflecting badly on me, you need to stop what you['re] doing
> or you['re] going to find yourself isolated and I will do what ever
> [sic] it takes to get you to stop[.] My staff, undershe[r]rif Bitner Lt
> Horke and especially Sgt Rose will follow my lead and instructions
> no matter what they are to the letter . . . I have spoke[n] personally to
> the prosecutor at least three times about you and so has Sgt Rose[.]
> You can either let this blow over and stop what you are doing and go
> home, or keep pushing shit around here and in court and you will go
> to prison . . . . I have running mates for the position of sheriff[.] You
> are doing just the sort of things that they want to make me fail at
> being elected as sheriff, and I cannot have that.

PageID.15. When Plaintiff told Defendant Savoie that he would not stop filing complaints,

Defendant Savoie thereafter set in motion retaliatory acts, such as: false write-ups, various forms

of punishment, and segregation. PageID.15-16.

Between February 6 and 7, 2012, Defendant Kibble allegedly "displayed

psychotic behavior" and took Plaintiff's blankets, sheets, shower shoes, and made various threats

against Plaintiff in retaliation for protected conduct. PageID.16. Plaintiff requested a restraining

order, but was denied, and Defendant Kibble continued to harass Plaintiff. PageID.16.

On April 25, 2012, Defendant Reid ordered that Plaintiff be locked down for

twenty-three hours a day. PageID.16. Later that day, Defendants Reid and Lightfoot conspired

against Plaintiff by writing a false misconduct report against him alleging that Plaintiff

threatened to blow up the building. PageID.16. Plaintiff claims that this was done in part due to

his protected conduct. PageID.17.

Later on, Plaintiff learned that approximately sixty-eight write-ups were issued

against Plaintiff.  PageID.17. Plaintiff asserts that one of these false write-ups stated that Plaintiff

was going to shoot people at Wal-Mart, and that another one alleged that he was going to blow

up a judge's bench. PageID.17. Plaintiff does not know for sure, but he believes Defendant Reid

wrote these false tickets. PageID.17.

On May 2, 2012, Defendant Reid told Plaintiff, " had you locked down, where you should have been in the first place." PageID.18. At some point between May 4 and 12, 2012, Defendant Bitner told all MDOC employees that Plaintiff was to be kept on lock down for twenty-three hours a day. PageID.18. Plaintiff remained in restricted confinement until he was transferred out of the facility on May 30, 2012. PageID.18.

In addition, at an unknown time, Defendant Bitner went to Plaintiff's cell and threatened that if Plaintiff did not stop filing grievances, things "would go bad for Plaintiff." PageID.20. Defendants Horke and Rose also threatened Plaintiff at an unknown time and place. PageID.20. Plaintiff alleges that Defendants Reid, Stanaway, Kibble, Rose, Perry, Horke, and Lightfoot wrote reports against Plaintiff at an unknown time. PageID.20.

Based on these occurrences, Plaintiff asserts Defendants violated his constitutional rights. ECF No. 1. Plaintiff seeks legal redress before this Court for these alleged violations of his constitutional rights.

## I.

Presently before the Court are Defendants' motions for summary judgment, pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of

material fact for trial. *Celotex*, 477 U.S. at 324-25.  The nonmoving party cannot rest on its

pleadings but must present "specific facts showing that there is a genuine issue for trial."  *Id.* at

324 (quoting Fed. R. Civ. P. 56(e)).  The evidence must be viewed in the light most favorable to

the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).  Thus, any

direct evidence offered by the plaintiff in response to a summary judgment motion must be

accepted as true. *Muhammad*, 379 F.3d at 416 (*citing Adams*, 31 F.3d at 382).  However, a mere

scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477

U.S. at 251-52.  Notably, "[w]hen opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court could not

adopt that version of the facts for the purposes of ruling on a motion for summary judgment."

*Scott v. Harris*, 550 U.S. 372, 380 (2007). Ultimately, the court must determine whether there is

sufficient "evidence on which the jury could reasonably find for the plaintiff."  *Anderson*, 477

U.S. at 252; *see also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single

affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf.*

*Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit

concerning state of mind created factual issue).

## II.

Plaintiff alleges three groups of claims against the remaining Defendants: (1) First

Amendment retaliation claims, (2) Eighth Amendment deliberate indifference claims, and (3) an

invasion of privacy claim. Each claim will be evaluated individually.

### A. First Amendment Retaliation

Plaintiff claims that Defendants Savoie, Bitner, Horke, Rose, Reid, Stanaway, Kibble, Perry, and Lightfoot retaliated against Plaintiff for filing complaints and grievances.

In general, retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X*, 175 F.3d at 394. In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to demonstrate that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### i. January 9, 2012: Defendant Stanaway

Plaintiff first claims that Defendant Stanaway filed a false misconduct ticket against Plaintiff on January 9, 2012, and inappropriately requested that Plaintiff remain in lock down indefinitely. PageID.14.

Plaintiff has failed to allege that he engaged in any protected conduct, or that Defendant Stanaway's misconduct ticket against Plaintiff was false or otherwise done in retaliation for any protected conduct that Plaintiff engaged in. Plaintiff merely alleges that Defendant Stanaway wrote a false misconduct ticket against Plaintiff on January 9, 2012. Plaintiff's conclusory allegation of retaliation, without any "concrete and relevant particulars," is insufficient to state a claim against Defendant Stanaway. *See Salstrom v. Sumner*, No. 91-15689,

1992 WL 72881, at * 1 (9th Cir. Apr. 10, 1992); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."); *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (noting it

is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by

direct evidence).  Consequently, Plaintiff's claim against Defendant Stanaway fails.

### ii. February 2, 2012: Defendant Savoie

Plaintiff next alleges that on February 2, 2011, Defendant Savoie threatened

Plaintiff in retaliation for Plaintiff's grievance practices. PageID.15. Specifically, Plaintiff asserts

that he was called into Defendant Savoie's office, and Defendant Savoie told him that:

> I want to be elected to at least two terms as sheriff[.] What you['re]
> doing is reflecting badly on me, you need to stop what you['re] doing
> or you['re] going to find yourself isolated and I will do what ever
> [sic] it takes to get you to stop[.] My staff, undershe[r]rif Bitner Lt
> Horke and especially Sgt Rose will follow my lead and instructions
> no matter what they are to the letter . . . I have spoke[n] personally to
> the prosecutor at least three times about you and so has Sgt Rose[.]
> You can either let this blow over and stop what you are doing and go
> home, or keep pushing shit around here and in court and you will go
> to prison . . . . I have running mates for the position of sheriff[.] You
> are doing just the sort of things that they want to make me fail at
> being elected as sheriff, and I cannot have that.

PageID.15. Plaintiff asserts that the conduct Defendant Savoie was referring to was Plaintiff's

consistent filing of letters of concern, complaints, and civil complaints. PageID.15.

Plaintiff has sufficiently alleged that he engaged in protected conduct under the

first prong of his retaliation claim—that he filed grievances and lawsuits. *See Smith*, 250 F.3d at

1037 (noting that filing a prison grievance is constitutionally protected conduct for which a

prisoner cannot be subjected to retaliation); *see also Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir.

2002) ("[P]rotected conduct, for purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in direct appeals, habeas corpus actions, and civil rights claims.").

However, Plaintiff has not demonstrated that Defendant Savoie took an adverse action against him that would deter a person of ordinary firmness from engaging in that protected conduct in the future. *See Thaddeus-X*, 175 F.3d at 394. A specific threat of harm may satisfy the adverse action requirement of a retaliation claim if it would deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g., Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *Smith v. Yarrow*, 78 Fed. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 Fed. App'x at 542. For example, "[v]erbal threats and abuse made in retaliation for filing a grievance" are not actionable. *Jordan v. Caruso*, No. 06-CV-10979, 2009 WL 2960031, at *8 (E.D. Mich. June 11, 2009), *report and recommendation adopted*, No. 06-CV-10979, 2009 WL 2960030 (E.D. Mich. Sept. 14, 2009) (citing *Alder v. Anderson*, No. 06-CV-12612, 2006 WL 1791338 (E.D. Mich. June 27, 2006)); *see also Catanzaro v. Carr*, No. 10-CV-14554, 2011 WL 5008380, at *3 (E.D. Mich. Sept. 11, 2011) (citing *Carney v. Craven*, 40 Fed. App'x 48, 50 (6th Cir. 2002) ("Verbal abuse and threats are not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983)).

Here, Defendant Savoie's verbal threat that Plaintiff would go to prison for a long time if he continued filing letters of concern and lawsuits is not sufficient to state a claim of retaliation. *See Catanzaro*, 2011 WL 5008380, at *3; *see also Anthony v. Walker*, No. 07-10351,

2008 WL 2447298, at *1 (E.D. Mich. June 18, 2008 ) (citing *Tailor v. City of Falmouth*, 187

Fed. App'x 596, 600 (6th Cir. 2006) ("[T]he law is clear that mere verbal harassment does not

violate the Constitution.")). Moreover, Defendant Savoie's verbal threat that he would speak to

the prosecutor in Plaintiff's case if Plaintiff did not stop filing complaints is not sufficient to state

a constitutional deprivation either. *See Tailor*, 187 Fed. App'x at 600. As a result, Plaintiff's

retaliation claim against Defendant Savoie fails.

> ### iii. February 6 through 7, 2012: Defendant Kibble

Next, Plaintiff claims that Defendant Kibble unnecessarily harassed Plaintiff in

front of Plaintiff's cell from February 6 through 7, 2012, by taking his "blankets, sheets[,] shower

shoes, and ma[king] threats against Plaintiff in retaliation for protected conduct." PageID.16.

Notably, Plaintiff does not point to a specific grievance, letter of concern, or

lawsuit for which Defendant Kibble could have retaliated against Plaintiff. Rather, Plaintiff

simply concludes that Defendant Kibble made threats and took his property "in retaliation for

protected conduct." PageID.16. This thinly veiled allegation is not sufficient to demonstrate that

Plaintiff actually engaged in protected conduct for which Defendant Kibble could have retaliated

against him, as required under the first element of his retaliation claim. *Iqbal*, 556 U.S. at  678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."). Even if this were sufficient to demonstrate protected conduct,

verbal threats and harassment do not violate the Constitution. *See Tailor*, 187 Fed. App'x at 600.

As a result, this claim fails.

*iv. April 25, 2012: Defendants Lightfoot and Reid*

Plaintiff claims that Defendants Lightfoot and Reid conspired to retaliate against Plaintiff when they wrote a false misconduct against Plaintiff on April 25, 2012, alleging that Plaintiff threatened to blow up the building. PageID.16. Plaintiff claims that this was done in retaliation for Plaintiff's grievance practices. PageID.17.

Again, Plaintiff has failed to allege any facts showing that he engaged in protected conduct for which Defendants retaliated against him. Rather, he makes a conclusory statement that he engaged in "protected conduct" generally. PageID.16-17. As a result, his threadbare assertion of retaliation is insufficient to state a claim against Defendants Lightfoot and Reid. *Iqbal*, 556 U.S. at 678.

Even if Plaintiff had overcome the first (and second) prong of his retaliation claim, Plaintiff has failed to establish the third element of causation (that Defendants filed the false misconduct because of Plaintiff's numerous grievances and lawsuits). Plaintiff has not provided any evidence to support his theory of retaliation against Defendants Lightfoot and Reid. *See generally* ECF No.1, 1-2, 1-3, 1-4, 1-5, 1-6. In fact, aside from claiming the ticket was false, Plaintiff has not alleged or provided any evidence indicating that the misconduct ticket was actually false or later rescinded. Plaintiff's conclusory allegations of retaliatory motive without any "concrete and relevant particulars," means that Plaintiff has failed to raise a genuine issue of fact for trial. *Salstrom*, 1992 WL 72881, at * 1; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Harbin-Bey*, 420 F.3d at 580 (noting it is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence). Because Plaintiff merely

-11-

alleges the ultimate fact of retaliation, Plaintiff's claim that Defendants Lightfoot and Reid retaliated against him fails.

### v. May 2, 2012: Defendant Reid

Plaintiff alleges that on May 2, 2012, Defendant Reid likely wrote two false misconduct tickets against him and told Plaintiff that he "had [him] locked down, where [Plaintiff] should have been in the first place." PageID.17-18. The first misconduct ticket alleged that Plaintiff "was going to shoot people at walmart," and the second indicated that Plaintiff "was going to blow up the judges bench." PageID.17.

Notably, Plaintiff does not allege that Defendant Reid wrote these misconduct tickets and had Plaintiff placed in lock down in retaliation for any protected conduct. PageID.17-18 (noting Plaintiff does *not* allege that he engaged in protected conduct when referencing Defendant Reid). In fact, Plaintiff stated in his complaint that he is not sure that Defendant Reid is the person that wrote these misconduct tickets. PageID.17. Because Plaintiff has not sufficiently alleged that Defendant Reid retaliated against him, Plaintiff's claim for retaliation against him fails. *See Salstrom*, 1992 WL 72881, at * 1 (stating retaliation occurred without providing facts or evidence is not sufficient to sustain a retaliation claim); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### vi. May 4 through May 12, 2012: Defendant Bitner

Plaintiff next asserts that on May 12, 2012, Defendant Bitner ordered that Plaintiff was to be locked down for twenty-three hours a day in retaliation for Plaintiff's protected conduct. PageID.18.

Again, Plaintiff has not sufficiently alleged that he engaged in protected conduct, as required to satisfy the first element of his retaliation claim. Plaintiff has not provided or eluded to any specific grievance, letter of concern, or lawsuit for which Defendant Bitner could have retaliated against him. As a result, Plaintiff has failed to provide any evidence of retaliation to support his claim, and it is therefore denied. *See Salstrom*, 1992 WL 72881, at * 1 (stating retaliation occurred without providing facts or evidence is not sufficient to sustain a retaliation claim); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Moreover, even if he had demonstrated that he engaged in protected conduct (and that an adverse action was taken), Plaintiff has not shown that Defendant Bitner's order placing Plaintiff on lock down was taken as a result of Plaintiff's protected conduct. Rather, the evidence shows that Defendant Bitner said Plaintiff should be on lock down because of Plaintiff's "several major incident reports, threats towards Deputies, a Webers and Devers report, and Dr. Devers calling to administration." PageID.1185. Based on this information, it is clear that Plaintiff was placed on lock down due to Plaintiff's own misconduct, and not because of any protected conduct that Plaintiff engaged in. Therefore, his claim against Defendant Bitner fails.

### vii. Defendants Bitner, Horke, and Rose

Finally, Plaintiff claims that at an unknown time, Defendants Bitner, Horke, and Rose threatened Plaintiff in retaliation for engaging in protected conduct. PageID.20. Specifically, Plaintiff claims that Defendant "Bitner made several direct appearances at Plaintiff[']s cell . . . [and] also made threats against Plaintiff that if he didn[']t stop filing grievances etc that things would go bad for Plaintiff." PageID.18. In addition, Plaintiff claims

-13-

that Defendants Rose and Horke "also threatened Plaintiff, several times." PageID.20.

As previously mentioned, vague verbal threats do not amount to a constitutional violation.  *See Anthony*, 2008 WL 2447298, at *7 (citing *Johnson*, 357 F.3d at 546 ("Harassment, verbal abuse, and minor threats do not violate the Constitution.")). Consequently, Plaintiff has not demonstrated that Defendants Bitner, Horke, and Rose violated his First Amendment rights when they made threats at unknown times against Plaintiff.

### B. Eighth Amendment Deliberate Indifference

Plaintiff's next group of claims states that Defendants Rose, Horke, Bitner, Savoie, Perry, and Cullinan violated Plaintiff's Eighth Amendment rights when they denied him treatment for his serious medical needs.

"While the Eighth Amendment does not apply to pre-trial detainees, the Due Process Clause of the Fourteenth Amendment does provide them with a right to adequate medical treatment that is analogous to prisoners' rights under the Eighth Amendment." *Russell v. Davis*, 552 Fed. App'x 314, 317 (6th Cir. 2013) (quoting *Gray v. City of Detroit*, 399 F.3d 612, 615-16 (6th Cir. 2005)).

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes.  U.S. Const. amend. VIII.  The Eighth Amendment's protections are limited to "deprivations of essential food, medical care, or sanitation [or] other conditions intolerable for prison confinement."  *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987).  For a prisoner to prevail on an Eighth Amendment claim, the

prisoner must exemplify that "he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Evans v. Capello*, No. 2:12-CV-135, 2012 WL 1611227, at *4 (W.D. Mich. May 8, 2012) (quoting *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010)). The Eighth Amendment obligates prison authorities to provide medical care to incarcerated people, and a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*; *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004) ("Where the seriousness of a prisoner's need[] for medical care is obvious even to a lay person."). If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something

-15-

more than mere negligence," *Farmer*, 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Notably, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical Malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

### i. July 25, 2011: Defendants Rose, Horke, Bitner, and Savoie

Plaintiff claims that on July 25, 2011, Defendants Rose, Horke, Bitner, and Savoie were deliberately indifferent to his medical needs. PageID.11. After assaulting another inmate on

-16-

July 25, Plaintiff was placed in I-Max where he "received lacerations etc and landed on a steel table and concrete." PageID.11. Plaintiff alleges that he told all four Defendants that he needed medical treatment, but they denied him such treatment. PageID.11. Plaintiff went to the hospital on July 29, 2011, received x-rays, and learned that he had a hematoma on his left rib cage and had a fracture. PageID.12.

Assuming (without deciding) that Plaintiff has demonstrated that he had an objectively serious medical need (a fracture and hematoma on his ribs), Plaintiff must demonstrate that Defendants Rose, Horke, Bitner, and Savoie had "a sufficiently culpable state of mind in denying [him] medical care." *See Brown*, 207 F.3d at 867 (citing *Farmer*, 511 U.S. at 834).

The evidence of record shows that an incident report dated July 25, 2011, by Defendant Sibbal (who reported the assault) stated that Sibbal called Dr. Graham around 11:30 p.m. because Plaintiff was complaining of back and neck pain. PageID.1149. Sibbal was informed that Plaintiff had to fill out a medical request form to receive a medical evaluation, so Sibbal provided plaintiff with the requisite Medical Request Form. PageID.1149. A few days later, on July 27, 2011, Plaintiff was evaluated by the Sault Tribe Health Center (STHC) for unspecified medical reasons. PageID.1078-1079. Then, on July 29, 2011, Plaintiff was taken to the hospital for his back and neck pain, at which time he was prescribed medication and told to apply ice on his ribs four times a day for the next day or two. PageID.1151-1155, 1160. Plaintiff was discharged from the hospital on July 29, 2011. PageID.1156-1159. Based on this evidence, it is clear that Plaintiff's requests for medical attention were taken seriously and he was not denied medical care. In addition, the evidence shows that Defendants Rose, Horke, Bitner, and Savoie

-17-

were not around Plaintiff on July 25, 2011, when Plaintiff requested medical attention (Sibbal was).  As a result, Plaintiff has not demonstrated that Defendants Rose, Horke, Bitner, and Savoie acted with deliberate indifference to his medical needs on July 25, 2011, meaning this claim fails.

Moreover, to the extent that Plaintiff disagrees with the medical treatment he received, this assertion fails to state an Eighth Amendment claim. *See Sanderfer*, 62 F.3d at 154-55 (noting differences in judgment between an inmate and prison medical personnel about medical treatment are not enough to state a deliberate indifference claim).

*ii. October 3, 2011: Defendants Cullinan, Savoie, Bitnar, Horke, and Rose*

Plaintiff alleges that on October 3, 2011 (when a new company took over healthcare at the facility), Defendant Dr. Cullinan stopped all of Plaintiff's medical treatments, appointments, physical therapy, and scheduled surgeries without ever evaluating Plaintiff. PageID.12, 1303, 1340-1341. In addition, Plaintiff claims that Defendants Rose, Horke, Bitner, and Savoie were also "directly involved in the denial of Plaintiff's medical course of treatment prescribed etc telling Plaintiff he would get no surgeries while at [the facility] because they had no aftercare services etc." PageID.12. Plaintiff claims due to these occurrences, he suffers from an uncontrollable bladder, poor stool control, and he has constant burning pain down his limbs and back, numbness in his extremities, and pain in his right wrist. PageID.1340-1341.

Assuming (without deciding), that Plaintiff has demonstrated that he suffered from a serious medical need under the objective prong of his deliberate indifference claim, Plaintiff must satisfy the subjective component against each Defendant. The evidence of record shows that, contrary to Plaintiff's allegations, Defendant Cullinan evaluated Plaintiff on October

-18-

3, 2011, at which time Plaintiff reported issues of back and wrist pain. PageID.1076. In addition, Defendant Cullinan's report shows that he did not terminate all of Plaintiff's treatment plans. For example, his report shows that Plaintiff was to continue on Lisinopril, Diltiazam ER, Ranitidine, Vistaril, Selenium, Clotrimazole, Flovent, and Proventil, and to start on Librium, and to stop Alprazolam. PageID.1076.  Therefore, to the extent Plaintiff's claim rests on his disagreement with Defendant Cullinan's treatment of him, this claim fails. *See Sanderfer*, 62 F.3d at 154-55 (noting differences in judgment between an inmate and prison medical personnel regarding the appropriate medical treatment or diagnoses is not sufficient to state a deliberate indifference claim); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996); *see also Gabehart*, 1997 WL 160322, at *2 (noting this is true even if the misdiagnosis results in considerable suffering).

Moreover, to the extent that Plaintiff claims Defendants Rose, Horke, Bitner, and Savoie were also "directly involved in the denial of Plaintiff's medical course of treatment," this claim also fails. Plaintiff has not provided any evidence demonstrating that these Defendants had a sufficiently culpable state of mind when denying Plaintiff medical care, or that they denied Plaintiff medical care at all. PageID.12.  The medical records clearly show that Plaintiff received medical care on October 3, 2011, and twenty-four other times from October 3 through December 12, 2011. PageID.1079. Therefore, Plaintiff's conclusory allegations of deliberate indifference against Defendants Rose, Horke, Bitner, Cullinan, and Savoie are dismissed.

### iii. December 2, 2011: Defendant Reid

Plaintiff's next claim is that on December 2, 2011, Defendant Reid denied Plaintiff medical attention after Defendant Reid "slammed Plaintiff[']s hand intentionally in the

food slot, cutting it." PageID.14.

Under the objective prong of Plaintiff's deliberate indifference claim, Plaintiff has not demonstrated that his medical need was sufficiently serious. *See Farmer*, 511 U.S. at 834. Plaintiff alleges that he received a cut on his hand that required medical attention. PageID.14. Such a minor malady requires that Plaintiff "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier*, 238 F.3d at 742; *see also Blackmore*, 390 F.3d at 898. Plaintiff has not placed any medical evidence in the record showing that he suffered detrimental medical effects as a result of not receiving medical care immediately. Rather, the evidence of record shows that Defendant Lightfoot saw Plaintiff on December 2, 2011, for Plaintiff's finger wound, and again on December 5, 2011, while he was doing rounds. PageID.1079, 1177. Defendant Lightfoot's December 5th report shows that Plaintiff's finger was healing well, and that Plaintiff said his finger was "fine" and that he has "done surgery on [himself] before [so] this is nothing." PageID.1179. Therefore, Plaintiff has not demonstrated that the cut on his hand was sufficiently serious under the objective prong of his deliberate indifference claim.

Even if Plaintiff had satisfied the objective component of this deliberate indifference claim, Plaintiff has not shown that Defendant Reid had a sufficiently culpable state of mind when denying Plaintiff medical treatment. Defendant Reid's December 2nd report shows that when Plaintiff was being served his food tray, Plaintiff slammed the food tray on the floor and slammed the food slot closed. PageID.1177. Plaintiff then pressed the emergency button and requested band-aids. PageID.1177. Plaintiff was brought band-aids and antibiotic cream. PageID.1177. The officer that brought Plaintiff the band-aids noticed that Plaintiff's middle

-20-

finger was swollen and had two cuts on it, so the officer contacted Defendant Lightfoot.

PageID.1177. Defendant Lightfoot told the officer he would see Plaintiff that day, and the officer

brought ice to Plaintiff. PageID.1177. Upon receiving the ice, Plaintiff took the bag of ice and

flushed it down the toilet. PageID.1177. Based on this information, it is clear that Defendant

Reid did not deny Plaintiff medical treatment on December 2, 2011, as Plaintiff alleges. As a

result, Plaintiff has not satisfied the subjective component of his deliberate indifference claim,

meaning his claim against Defendant Reid fails.

### C. Invasion of Privacy

Plaintiff's final claim states that Defendant Savoie is responsible for Plaintiff's

invasions of privacy caused by a policy that allows female guards to have unrestricted access to

the video monitors of Plaintiff while he uses the toilet and takes showers. PageID.10-11.

The Sixth Circuit has indicated that prisoners may retain a limited right of privacy

during showers and performance of bodily functions. Such decisions have held that the state

must justify a policy which requires prisoners to perform such activities in view of or in the

presence of corrections officers of the opposite sex under the four-factor test of *Turner v. Safley*,

482 U.S. 78 (1987). *Kent v. Johnson*, 821 F.2d 1220, 1227 (6th Cir. 1987); *see also Cornwell v.

Dahlberg*, 963 F.2d 912, 916 (6th Cir. 1992) (collecting cases) ("[A] convicted prisoner

maintains some reasonable expectations of privacy while in prison, particularly where those

claims are related to forced exposure to strangers of the opposite sex, even though those privacy

rights may be less than those enjoyed by non-prisoners."); *Griffin v. M.D.O.C.*, 654 F. Supp. 690

(E.D. Mich. 1982); *cf. Bell v. Wolfish*, 441 U.S. 520 (1979) (prisoners have diminished

expectation of privacy in their cells; unannounced search of rooms upheld against challenge

pursuant to the Fourth Amendment).

In *Turner*, the court set forth four factors, "relevant in determining the reasonableness of the regulation at issue."  482 U.S. at 89-91.  First, there must be a "valid, rational connection" between the prison regulation and the legitimate governmental interest put forward to justify it.  *Id.* at 89 (quoting *Block v. Rutherford*, 468 U.S. 576, 586 (1984)).  Second, the reasonableness of a restriction takes into account whether there are "alternative means of exercising the right that remain open to the prison inmate."  *Turner*, 482 U.S. at 90.  Third, the court should consider the "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally."  *Turner*, 482 U.S. at 90.  Finally, the existence or absence of ready alternatives of accommodating the prisoners' rights is relevant to the reasonableness issue.  *Id.*  As stated by the court, this final factor, is "not a 'least restrictive alternative' test."  *Id.*; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 350 (1987) ("Prison officials need not show that *no* reasonable method exists by which [prisoners] rights can be accommodated without creating bonafide [prison] problems.").  These four factors are "guidelines to be weighed in the evaluation of a regulation, rather than as four prongs of a test, each of which must be met." *Munir v. Scott*, 907 F.2d 151, *4 (6th Cir. 1990) (citations and quotations omitted).

The regulation at issue here is one dealing with the constant surveillance of inmates by guards of both genders. PageID.10-11.  Plaintiff takes issue with the fact that women officers may see him in a state of undress when conducting this surveillance. PageID.10-11. The Sixth Circuit has held that "a convicted prisoner maintains some reasonable expectations of privacy while in prison, particularly where those claims are related to forced exposure to

strangers of the opposite sex, even though those privacy rights may be less than those enjoyed by non-prisoners." *Cornwell*, 963 F.2d at 916; *see also Everson v. Mich. Dep't of Corrs.*, 391 F.3d 737, 757 (6th Cir. 2004) (quoting *Lee v. Downs*, 641 F.2d 1117, 1119 (4th Cir. 1981) (noting most people "have a special sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating.")). Based on these findings, it is clear that prisoners have a well-established privacy interest, especially with regard to opposite gender prison officials viewing a prisoner in a state of undress. As such, the Court must balance Plaintiff's privacy interests against Defendant's asserted governmental interest in maintaining its gender neutral surveillance of prisoners in all locations.

Defendant Savoie provided several reasons for allowing both male and female prison guards to conduct surveillance of prison inmates in the bathroom and shower areas. First, Defendant indicated that the purpose of this regulation is to protect inmates and staff from potential physical harm. PageID.1217. In addition, Defendant Savoie stated that women are also involved in surveillance duties at the facility because if they were not, this distinction would "conflict with the jail's equal employment policies and practices" that prohibit sex discrimination. PageID.1217.  Finally, Defendant indicated that prisoners have the ability to cover themselves up if they so choose when they are showering, because: (1) prisoners are provided towels when showering, and (2) prisoners may, and often do, wear underwear when showering. PageID.1217. Given this information, it is clear that prisoners are afforded a way to protect the "special sense of privacy in their genitals" or avoid the "especially demeaning and humiliating" experience that results from "involuntary exposure of [onself] in the presence of people of the other sex."  *Lee*, 641 F.2d at 1119; *Rose v. Saginaw*, 353 F. Supp. 2d 900, 922

(E.D. Mich. 2005) (noting that alternatives to naked confinement include allowing detainees to wear underwear, for example).  Overall, the regulation at issue has a legitimate governmental interest with reasonable alternatives to the nudity or exposure Plaintiff describes. *See also Bell*, 441 U.S. at 547 ("[W]hen an institutional restriction infringes a specific constitutional guarantee . . . the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security.").  As a result, the regulation allowing females guards to conduct video surveillance of prisoners in all locations is legitimate under the *Turner* test, meaning Plaintiff's invasion of privacy claim against Defendant Savoie fails.

III.

Overall, despite the Court's obligation to construe handwritten *pro se* documents liberally, Plaintiff's § 1983 fails.  Fed. R. Civ. P. 56; *see Estelle*, 429 U.S. at 106; *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (stating that *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, and will only be dismissed if the claim undoubtedly contains no facts to support its request for relief).  Accordingly, Defendants' Motions for Summary Judgment are appropriate.

In light of the foregoing, this Court concludes that Defendants' Motions for Summary Judgment (ECF No. 95, 97) are **GRANTED** and this case will be dismissed with prejudice in its entirety.  An Order and Judgment consistent with this Opinion will be entered.

**SO ORDERED**.

Dated:__5/27/2016___                    _/s/ *R. Allan Edgar*_____
                                        HON. R. ALLAN EDGAR
                                        UNITED STATES DISTRICT JUDGE